# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CHRIS WALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>THE GLAD PRODUCTS COMPANY,<br><br>Defendant | Case No. 24-cv-0078<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Chris Wall ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.  HARMS OF POLLUTION

1. Products that do not biodegrade are harmful to the environment.

2. "Biodegradable" materials are those that can be decomposed by nature, eventually becoming part of the land. Conversely, "non-biodegradable" materials do not break down naturally and can last for millennia after being deposited in landfills and natural habitats.

3. The accumulation of non-biodegradable waste disrupts ecological balance by polluting ecosystems, harming wildlife, and contributing to other environmental problems.[1]

---

[1] Kevin Lee, "What Are the Effects of Non-Biodegradable Waste?" SCIENCING April 23, 2018.

4. Plastic materials account for a large portion of non-biodegradable waste that negatively impacts the environment.

5. As of 2015, humans had manufactured around 8.3 billion tons of plastic, and around 60% of it is still in existence, deposited somewhere on the planet.

6. Every year, hundreds of millions of tons of single-use plastic packaging are discarded.[2]

7. Where plastic waste is not recycled or sent to landfills, it is incinerated.

8. This releases substantial amounts of carbon dioxide into the atmosphere, contributing to climate change.

9. Burning plastic also releases toxic gases, heavy metals, and carcinogenic particles into the air, destroying air quality and health of local communities.[3]

## II. CONSUMER DEMAND FOR ENVIRONMENTALLY FRIENDLY PRODUCTS

10. Americans are increasingly conscious of their environmental impact.[4]

11. Environmental product claims drive purchase decisions.[5]

12. In a 2019 Global Consumer Insights Survey, 37% of consumers stated

---

[2] Roni Dengler, "Humans Have Made 8.3 Billion Tons of Plastic. Where does it all Go?" PBS July 19, 2017.
[3] "Why burning plastic won't solve the plastic crisis" GREENPEACE July 28, 2022.
[4] Greg Petro, "Consumers Demand Sustainable Products and Shopping Formats," FORBES March 11, 2022.
[5] Amy Emmert, "The Rise of the Eco-Friendly Consumer," STRATEGY+BUSINESS July 8, 2021.

2

that they specifically seek out products with "environmentally friendly packaging."[6]

13. Survey data from The Recycling Partnership and Southwest News Service indicates consumers are willing to pay 26% more for sustainable products.

14. Approximately 70% of respondents would go out of their way to support companies making strong efforts to be sustainable.[7]

15. Products which promote their ability to be recycled and labeled as sustainable comprise close to 20% of the consumer-packaged goods market.[8]

## III. RECYCLING AS SOLUTION IS LIMITED

16. According to experts and climate activists, "recycling isn't working."[9]

17. One reason is the contamination of recycling with non-recyclable items.

18. Once contamination occurs, all otherwise recyclable contents can no longer be recycled.

19. Contamination occurs when non-recyclable waste is placed into recycling bins, preventing sorting of recyclable goods.

20. According to Recyclops, about 25% of all recycling is contaminated and

---

[6] "It's Time for a Consumer-Centered Metric: Introducing 'Return on Experience,'" PWC 2019.
[7] "Survey: Americans Prefer Sustainable Companies," THE RECYCLING PARTNERSHIP May 28, 2020; "Why More and More Companies are Finally Going Green," RTS February 21, 2022.
[8] Tensie Whelan and Randi Kronthal-Sacco, "Research: Actually Consumers Do Buy Sustainable Products," HARVARD BUSINESS REVIEW June 19, 2019.
[9] Renee Cho, "Recycling in the U.S. is Broken. How Do We Fix It?" COLUMBIA CLIMATE SCHOOL March 13, 2020.

3

is deposited in landfills with other non-recyclable waste.[10]

## IV. LEGAL BACKGROUND

21. The Federal Trade Commission ("FTC") developed regulations to prevent companies from misleading consumers about environmental claims ("Green Guides").

22. The Green Guides state that "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable." 16 C.F.R. § 260.12(a).

23. This includes marketing products as recyclable unless they can be "recovered from the waste stream through an established recycling program." 16 C.F.R. § 260.12(a).

24. Where "any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive." 16 C.F.R. § 260.12(d).

25. This means that a product's technical recyclability does not suffice for a recyclability claim if there is no established program available to recycle such products.

26. Greenpeace cautioned companies against recyclability claims in marketing or on products other than for PET #1 and HDPE #2 bottles and jugs.

27. Unqualified recyclability claims are permitted only if true for a substantial majority of consumers or communities where the products are sold. 16

---

[10] "Understanding Recycling Contamination" RECYCLOPS.

4

C.F.R. § 260.12(b)(1).

28. According to the Green Guides, a product may qualify recyclability claims by stating the percentage of consumers or communities to whom the claim will apply.

29. For example, if a claim applies to less than 60% of consumers where the product is sold, the Guides recommend a statement as follows:

> "This Product may not be recyclable in your area" or "Recycling facilities for this product may not exist in your area."

30. Where only a few communities support recyclability claims, the Guides requires the Product explicitly state so: "This product is recyclable only in a few communities that have appropriate recycling facilities." 16 C.F.R. § 260.12(b)(2).

## V.  LABELING IS MISLEADING

A. <u>Product Claims</u>

31. To leverage consumer demand for sustainable goods, The Glad Products Company ("Defendant") markets bags as designed specifically for "Recycling."



5

32. However, as one environmental leader noted, such marketing "confus[es] consumers."

33. First, since recyclables must be sorted, virtually all municipalities prohibit placing recyclables in plastic bags.

34. This is because "clear bag" or "blue bag" programs are virtually nonexistent in the United States.

35. One prominent recycling group even warned consumers, "Don't be fooled: If your city does not accept plastic bags for recycling [as most don't], they won't accept these either. A plastic bag is a plastic bag, no matter what Glad Products calls it."



36. Second, the Product is made from LDPE plastics, which are not recycled by domestic recycling facilities due to their low monetary value.[11]

37. The result is that the entire bags are rejected and deposited in landfills or

---

[11] John Hocevar, "Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability," GREEN PEACE February 18, 2020.

incinerated.

B. <u>Misleading Website Claims</u>

38. On its home page, Defendant directs consumers to learn about its "sustainability journey."



39. This purported commitment to sustainability supports the reasonableness of consumers' belief that its recyclability claims on the Product are truthful.

40. It further describes its "Four Pillars of Sustainability," one of which is "Products with Less Plastic," with "less plastic" in green font, the color associated by the public with environmental causes.



7

C. "Chasing Arrows" Symbol

41. These representations are reinforced by the "chasing arrows" symbol, universally recognized to indicate recyclability, causing consumers to incorrectly believe the Product is recyclable.



D. "Designed for Municipal Use"

42. The front label small print that the Product is "Designed for Municipal Use" is misleading as virtually no domestic recycling programs accept such bags.

43. This is inconsistent with FTC rules prohibiting marketing of products, even if made from recyclable material, where "because of its shape, size, or some other attribute, is not accepted in recycling programs."

44. To the extent the labeling and marketing may instruct purchasers to "Please Check Your Local Facilities" regarding the existence of "blue bag"

8

programs, it fails to disclose that hardly any will accept them. 16 C.F.R. § 260.12(b)(2).

45. This is confirmed by the Green Guides, which recognize that telling consumers to "Check to see if recycling facilities exist in your area" can be misleading where it fails to disclose their "limited availability."

46. Though its website references "applicable municipal programs," nowhere is it indicated such programs are unlikely to exist for most consumers.



## VI. CONCLUSION

47. The Product is misleadingly labeled as "recycling bags" such that consumers will expect them to be recyclable.

48. As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately $11.99 per box of 28 bags, excluding tax and sales, higher than similar products, represented in a non-

misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

49. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

50. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

51. Plaintiff is a citizen of Missouri.

52. Defendant is a citizen of Delaware based on its corporate formation.

53. Defendant is a citizen of California based on its principal place of business.

54. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

55. The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold through thousands of retailers, such as grocery stores, convenience stores, gas stations, truck stops, drug stores, big box stores, warehouse club stores and online in this State and online to citizens of this State.

56. The Court has jurisdiction over Defendant because it transacts business within Missouri and sells the Product to consumers within Missouri through

hundreds of retailers, such as grocery stores, big box stores, convenience stores, drug stores, bodegas, warehouse club stores, and online.

57. The Court has jurisdiction over Defendant because it has committed tortious acts within this State through the marketing, distribution and sale of the Product, which is misleading to consumers in this State.

58. The Court has jurisdiction over Defendant because it has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

**VENUE**

59. Plaintiff resides in Saint Louis City County.

60. Venue in the Eastern Division of this District is based on Plaintiff's residence in Saint Louis City County.

61. Venue is based on Plaintiff's residence in Saint Louis City County because a substantial or the entire part of the events or omissions giving rise to his

claims occurred in Saint Louis City County, including his purchase of the Product based on the representations and omissions identified here.

62. Venue is based on Plaintiff's residence in Saint Louis City County because this is where his causes of action accrued, including his purchase, payment of money for or towards, use and/or consumption of the Product.

63. Plaintiff purchased, paid money for or towards, used and/or consumed the Product in reliance on the representations and omissions identified here in Saint Louis City County.

64. Plaintiff first became aware the representations and omissions were false and misleading in Saint Louis City County.

## PARTIES

65. Plaintiff Chris Wall is a citizen of Saint Louis City County, Missouri.

66. Defendant The Glad Products Company is a Delaware corporation with a principal place of business in California.

67. Plaintiff is like most consumers and cares about the environment and is willing to pay extra for products that contribute to tangible environmental benefits, such as the promotion of recycling.

68. Reasonable consumers like Plaintiff are surprised to find out the Product is not recyclable anywhere nor suitable for municipal use in most municipalities.

69. Plaintiff was unaware that using "recycling" bags as advertised can result

12

in all otherwise recyclable goods inside being diverted to landfills or incinerated.

70. Plaintiff reasonably inferred that products described as "Recycling _____," and "Designed for Municipal Use" would be recycled and accepted for use by recycling programs in his area.

71. Plaintiff is like most consumers and seeks products promoted as sustainable, such as bags designed for recycling.

72. Plaintiff is like most consumers and looks to the front label of packaging to see what they are buying and to learn basic information about it.

73. Plaintiff is like most consumers and is accustomed to the front label of packaging telling them if what they are buying may be beneficial for the environment.

74. Plaintiff is like most consumers and when he sees a label and product described as a recycling bag, he expects it will be recyclable.

75. Plaintiff did not expect the Product would not be recyclable because of the unavailability of recycling programs where he lived.

76. Plaintiff read, saw and relied on the statements of recycling bags and/or other associated imagery to expect the Product was recyclable and capable of being recycled.

77. Plaintiff relied on the omission of any information that the Product was not recyclable at almost no locations.

78. Plaintiff purchased the Product with the labeling, marketing, representations and omissions identified here at grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and/or other similar locations, in Saint Louis City County in Missouri between December 2018 and December 2023.

79. Plaintiff bought the Product at or exceeding the above-referenced price.

80. Plaintiff paid more for the Product than he would have had he known it was not recyclable.

81. The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

82. Plaintiff seeks to represent the following class:

> All persons in Missouri who purchased the Product in Missouri during the statutes of limitations for each cause of action alleged.

83. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

84. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive

representations, omissions, and actions.

85. Plaintiff is an adequate representative because his interests do not conflict with other members.

86. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

87. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

88. The class is sufficiently numerous and likely includes several thousand people.

89. This is because Defendant sold the Product through hundreds of retailers in this State during the past several years.

90. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Missouri Merchandising Practices Act ("MPA")
Mo. Rev. Stat. § 407.025, *et seq*.

91. Plaintiff incorporates by reference paragraphs 1-49.

92. The purpose of the MMPA is to protect consumers against unfair and deceptive practices.

93. Representing the Product was recyclable through its name, "Recycling,"

followed by the specific designated use, i.e., "Kitchen," was misleading because it was not recyclable and could not be recycled for Plaintiff and consumers.

94.  The false and deceptive representations and omissions with respect to the Product's ability to be recycled are material in that they are likely to influence consumer purchasing decisions.

95.  Plaintiff believed the Product was recyclable.

96.  Reliance was reasonable and justified because of the public trust placed in companies selling products, who expect them to be labeled accurately and in a non-misleading manner.

97.  Plaintiff paid more for the Product and would not have paid as much if he knew that it was not recyclable.

98.  Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling, advertising and packaging of the Product, by paying more for it than he otherwise would have.

99.  Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

100. As a result of Defendant's misrepresentations and omissions, Plaintiff and class members suffered damages in the price premium paid for the Product,

which is the difference between what he paid and how much it would have been sold for without the false and misleading representations and omissions identified here.

## COUNT II
### Unjust Enrichment

101. Plaintiff incorporates by reference paragraphs 1-49.

102. Defendant received benefits and monies because it represented to Plaintiff and consumers that the Product was and could be recycled even though it could not be.

103. Principles of equity and good conscience prohibit Defendant from retaining profits made from the sale of the Product.

104. Plaintiff seeks disgorgement of such profits and establishment of a constructive trust on behalf of the Class.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated: January 16, 2024

Respectfully submitted,

/s/ Daniel F. Harvath
Harvath Law Group LLC
75 W Lockwood Ave Ste 1
Webster Groves MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Daniel F. Harvath

Harvath Law Group LLC

Spencer Sheehan*
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

**Pro Hac Vice* Application to be Filed